CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
AUG 23 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:13CR00004 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| JABARI ABDUL LATEF CARTER, | ) | |
| | ) | |
| Defendant. | ) | By: B. WAUGH CRIGLER |
| | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3), and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury returned a multiple-count Indictment charging defendant in **Count One** with knowingly and intentionally combining, conspiring, confederating and agreeing with other persons, both known and unknown, to knowingly and intentionally distribute and possess with intent to distribute twenty-eight (28) grams or more of a mixture or substance containing a detectable amount of cocaine base, also known as "crack," a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B), all in violation of Title 21, United States Code, Sections 846; in **Count Four** with knowingly and intentionally distributing a mixture or substance containing a detectable amount of cocaine base, also known as "crack," a Schedule II controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C); and in **Count Five** with knowingly and intentionally distributing a mixture or substance containing a detectable amount of cocaine base, also known as "crack," a Schedule II controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C). Defendant was not charged in Counts Two, Three, and Six of the indictment. Defendant acknowledged his initials and signature to a plea agreement with the

government which has been filed with the court. The agreement called for the defendant to plead guilty to Count One.

On August 20, 2013, a plea hearing was conducted before the undersigned. The defendant was placed under oath and testified that his full legal name is Jabari Abdul Latef Carter, he was born on January 27, 1990, and that he attended school through tenth grade. The defendant stated that he can read, write, and understand the English language. The defendant further stated that he was fully aware of the nature of the charges against him and the consequences of pleading guilty to those charges. The defendant informed the court that he was not under the influence of alcohol, but that he had been prescribed medication to treat his ADHD, anxiety, depression, and anger issues. The defendant could not recall the names of his medications, but testified that they did not impair his ability to understand what the court was saying or the nature of the proceedings. The defendant testified that he had received a copy of the Indictment pending against him, and that he had fully discussed with his counsel the charges therein, the maximum punishments for those charges, any defenses thereto, and his case in general. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty. The defendant testified that he understood that the offense in Count One is a felony, and if his plea is accepted, he will be adjudged guilty of that offense. The defendant agreed that he would not be considered a prevailing party with regard to these charges. The defendant explained and it was stipulated that he has a separate agreement with the Commonwealth Attorney's office, in which the Commonwealth would move to dismiss his state probation violation upon his plea of guilty in this case.

The defendant acknowledged that the maximum statutory penalty is a $5,000,000 fine and/or imprisonment for a term of forty years, together with a term of supervised release, and that there is a minimum term of five years. The defendant was informed that parole has been abolished, and that if he is sentenced to prison, he will not be released on parole, but on

supervised release, a violation of which could result in additional incarceration. The government was not seeking forfeiture, but the defendant stated that he abandoned any interest in the items seized as evidence in the prosecution of this case. The defendant was informed that he may be required to pay restitution, and, if so, must make a good faith effort to do so. Finally, the defendant testified that he understood that, upon conviction, he will be required to pay a mandatory assessment of $100 per felony count of conviction.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that the Sentencing Guidelines are no longer mandatory, but the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the Sentencing Guidelines might apply in his case. He stated that he understood the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the Guidelines. The defendant stated that he understood that the eventual sentence imposed may be different from any estimate he had formed or his attorney had given him, or any recommendation by the government, and that the court has the authority to impose a sentence that is either higher or lower than that called for by the Guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty.

The defendant acknowledged it was agreed in the Plea Agreement that the 2012 edition of the United States Sentencing Guidelines Manual was applicable, and that it had been stipulated that Sentencing Guidelines 2D1.1(a)(5) & (c)(5) are applicable to his conduct, resulting in an offense violation level of 30. The parties reserved the right to argue whether other guidelines should apply to defendant's case. The defendant also stated that he understood that,

even if he fully cooperates with law enforcement, the government is under no obligation to file a motion to reduce his sentence for substantial assistance. The Plea Agreement further provides that, if the government makes the motion, it is up to the court to determine how much of a departure, if any, should be made. The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the Plea Agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a), and, if applicable, the government will move that he be given an additional one-level (1) reduction under USSG § 3E1.1(b). The defendant agreed that he had knowingly and voluntarily waived his rights to request or receive any records pertaining to the investigation or prosecution of his case, including any records that may be sought under the Freedom of Information Act or the Privacy Act of 1974. The defendant agreed he would submit a financial statement, if called upon to do so. He further agreed that from the time of his signing of the plea agreement, or the date he signs the financial statement, whichever is earlier, he would not convey anything of value without authorization from the government. The defendant acknowledged his monetary obligations under the plea agreement, which calls for such to be due immediately and subject to immediate enforcement.

The defendant acknowledged that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in the Indictment, including any facts related to sentencing. The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which, according to the Plea Agreement, will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty and persist in that plea;
2. The right to a speedy and public jury trial;
3. The right to assistance of counsel at that trial and in any subsequent appeal;
4. The right to remain silent at trial;
5. The right to testify at trial;
6. The right to confront and cross-examine witnesses called by the government;
7. The right to present evidence and witnesses in his own behalf;

4

8. The right to compulsory process of the court;
9. The right to compel the attendance of witnesses at trial;
10. The right to be presumed innocent;
11. The right to a unanimous guilty verdict; and
12. The right to appeal a guilty verdict.

The defendant testified that he understood that, under the terms of the agreement, he was waiving his rights to appeal, except that he was not waiving his right to appeal or have his attorney file a notice of appeal as to any issue which cannot by law be waived. The defendant acknowledged that he had agreed to waive his right to collaterally attack his conviction or sentence in the case, except to the extent such attack is based on ineffective assistance of counsel or a constitutional defect in the jurisdiction of the court. The defendant was informed that, if he chose to appeal any issue which had been waived, the government could treat such as a breach of the Plea Agreement and exercise all of its remedial rights under the Plea Agreement, including the right to recharge him.

The defendant testified that he understood that he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm. The defendant stated that he was satisfied with the advice and representation given to him in this case by his counsel, and that he believed the representation had been effective. The defendant asked the court to accept his plea of guilty to Count One.

**THE GOVERNMENT'S EVIDENCE**

The defendant and the Government agreed to a Stipulation of Facts. The Stipulation of Facts having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

The offenses described below occurred within the Western District of Virginia. The following briefly summarizes the facts and circumstances surrounding the defendant's criminal conduct. This statement does not contain all information obtained during the investigation or all facts applicable to an accurate presentence investigation report and sentencing guidelines calculation.

**Historical Testimony**

Government witnesses would testify that between January 2012 and October 2012, Joshua Adriel WASHINGTON ("WASHINGTON"), James Carmaine RUSH ("RUSH") and Jabarie CARTER ("CARTER") conspired together and with others to distribute crack cocaine in the Charlottesville area.

On October 30, 2012, agents with the Jefferson Area Drug Enforcement ("JADE Agents") conducted a proffer interview with Individual A. Individual A explained to JADE Agents that shortly after being released from federal prison in late 2011, he began distributing crack and powder cocaine in the Charlottesville area. Individual A admitted to supplying RUSH and WASHINGTON with crack cocaine. Specifically, Individual A recounted three specific sales with RUSH involving crack cocaine, totaling 14 ounces, in February and March of 2012. Further, Individual A recounted two deliveries of crack cocaine, totaling 6 ounces, to WASHINGTON. Individual A also informed JADE Agents that WASHINGTON and RUSH controlled the crack cocaine trade on Prospect Avenue in Charlottesville, Virginia.

On February 12, 2012 JADE Agents conducted a proffer interview with Individual B. Individual B explained to JADE Agents that he sold Jabari CARTER 16 grams of crack cocaine as well as 3.5 grams of the same substance to WASHINGTON.

**Undercover Buys**

On August 22, 2012, a Confidential Informant (CI), working on behalf of JADE, arranged and purchased 6.5 grams of crack cocaine from Joshua WASHINGTON.

On August 30, 2012, at approximately 2:10 p.m., the same CI arranged and purchased 19.5 grams of crack cocaine from RUSH. Because the CI was equipped with an audio/visual recording device, JADE Agents were able to monitor the drug transaction between the CI and RUSH. During the drug transaction the CI informed RUSH that he wished to buy more crack from both RUSH and WASHINGTON, to which RUSH simply replied, "yeah, yeah." Later that evening, the CI arranged to purchase more crack cocaine from RUSH. RUSH arrived at the pre-determined meeting place at approximately 9:10 p.m. and sold 27.5 grams of crack cocaine to the CI. During this recorded drug purchase, the CI told RUSH that if RUSH and WASHINGTON were too busy to sell him crack they could send someone else.

On September 21, 2012, the CI called WASHINGTON to set up another purchase of crack cocaine. During their recorded telephone conversation, WASHINGTON asked the CI if he wanted "the little homey to come through now." When the CI said yes, WASHINGTON told the CI that he would "have someone come through." Soon thereafter, Jabari CARTER arrived at the pre-determined location and sold 5.3 grams of crack cocaine to the CI. Because the CI was equipped with an audio/visual recording device, JADE Agents were able to monitor the drug transaction between the CI and CARTER. During the drug transaction, CARTER told the CI that Joshua WASHINGTON was "his man" and that the CI could contact CARTER directly if WASHINGTON did not have any crack cocaine. The CI explained to CARTER that WASHINGTON had told him the same thing. On September 24, 2012, the CI contacted

7

CARTER directly to purchase more crack cocaine. CARTER arrived at the pre-determined meeting place and sold 27 grams of crack cocaine to the CI.

In total, WASHINGTON, RUSH and CARTER were responsible for conspiring together and with others to distribute in excess of twenty-eight grams of crack cocaine in the Western District of Virginia.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

(1) The defendant is fully competent and capable of entering into a plea agreement and making an informed plea;

(2) The defendant is aware of the nature of the charges and the consequences of his plea;

(3) The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Indictment; and

(4) The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Count One of the Indictment. The undersigned DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for December 9, 2013 at 10:00 a.m. before the presiding District Judge in Charlottesville.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within fourteen days (14) after being served with a copy of this Report and Recommendation,

any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within fourteen days could waive appellate review. At the conclusion of the fourteen-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge. The Clerk is hereby directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

August 23, 2013
Date